OPINION
{¶ 1} Defendant-appellant Larry Heys appeals from his conviction and sentence for Attempted Felonious Assault, following a guilty plea. Heys contends that he was denied the effective assistance of defense counsel. He further contends that his guilty plea was not made voluntarily and that the trial court erred by accepting his plea.
 {¶ 2} We conclude that Heys has failed to demonstrate prejudicial ineffective assistance of counsel. We further conclude that the trial court followed proper procedures in accepting Heys' guilty plea and that the record supports a finding that Heys' plea was voluntarily made.
 {¶ 3} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 4} Heys was charged with one count of Domestic Violence and one count of Attempt to Commit Felonious Assault. At the plea hearing, counsel for Heys made a motion to withdraw as counsel. In support of the motion, counsel stated: "I don't know if it's me not just being effective counsel for him or what or some type of communication barrier. But he is — he's not wanting to do anything and I fear that he's going to go to trial and claim ineffective assistance of counsel because there's a communication barrier."
 {¶ 5} The trial court denied the motion and indicated that any motion for new counsel would be rejected unless Heys "communicate[d] something [to] show that there is a complete and absolute breakdown in the attorney/client relationship".
 {¶ 6} The State then stated the terms of the negotiated plea agreement. Defense counsel again asked to withdraw as counsel and again stated that he did not think Heys would be effectively represented at trial due to the "communication gap."
 {¶ 7} The trial court then addressed Heys who stated that he had a "miscommunication" with counsel. Specifically, Heys stated that he had asked counsel to inquire whether Heys could have "three days on the street to take care of * * * personal affairs" prior to serving any time, and that counsel failed to follow through with the inquiry. Heys also indicated that he attempted to contact counsel regarding this issue, but was unable to reach him.
 {¶ 8} The prosecutor then stated that defense counsel had raised this issue with him and that the State opposed the proposed release. The trial court also stated that this request would have been denied. The trial court went on to discuss the plea agreement with Heys. Heys conferred with his counsel and determined that he would accept the plea agreement. The trial court conducted a Crim.R. 11 inquiry and then accepted Heys' plea. Subsequently, Heys was sentenced to a two-year term of incarceration. From his conviction and sentence, Heys appeals.
 II {¶ 9} Heys' First Assignment of Error is as follows:
 {¶ 10} "The appellant was deprived of the effective assistance of counsel."
 {¶ 11} Heys contends that he was denied the effective assistance of trial counsel. While his argument is not entirely clear, it appears that he faults counsel for failing to obtain the court's permission to withdraw as counsel. He also claims that he was under the impression that he would not be permitted to obtain new counsel for trial if he so requested. In conjunction with the claim of lack of effective assistance of counsel, Heys contends that he only pled guilty because he did not think he would be able to get new counsel appointed for trial. He argues that "counsel's failure to insure this situation was remedied or at a minimum to insure [Heys] understood that he would not have to proceed to trial with present counsel" constitutes ineffective assistance of counsel.
 {¶ 12} In order to establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that prejudice occurred due to the deficiency. Strickland v. Washington
(1984), 466 U.S. 668. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley
(1989), 42 Ohio St.3d 136, at paragraph two of the syllabus. "In the context of a guilty plea, this test requires a defendant to demonstrate `that counsel's performance was deficient and that, but for counsel's deficient performance, he would not have entered a guilty plea." Statev. Bailey, Montgomery App. No. 19736, 2004-Ohio-273, ¶ 9, citations omitted.
 {¶ 13} We begin with the issue of whether trial counsel was ineffective. We first note that counsel did not, as Heys indicates, admit to ineffective assistance of counsel during the plea hearing. Instead, counsel stated that he worried that his representation during any trial
would be rendered ineffective in light of the communication problem between himself and Heys. Counsel made two separate requests to withdraw during the plea hearing. It is clear that counsel brought the communications problem to the trial court's attention. Counsel even asked the court whether it would make a different ruling if Heys personally requested new counsel. The trial court did state that it was not inclined to grant a motion for new counsel, given that trial was to commence three days after the plea hearing. However, it is clear that the trial court informed both Heys and his counsel that it would entertain a motion for new counsel for trial, but was not likely to grant the requested relief unless Heys demonstrated that there was a complete breakdown in the attorney-client relationship. Heys did not claim that there was a complete breakdown in the attorney-client relationship.
 {¶ 14} The record shows that Heys and counsel conducted an off-the-record discussion after the withdrawal request was made, but before the plea agreement was accepted. There is no record of the contents of this discussion. We cannot determine from this record whether Heys was, in fact, under the impression that he would be denied new counsel if he requested new counsel for trial. Indeed, the only issue personally raised by Heys, when directly addressed by the trial court, involved his frustration over the issue of counsel's failure to contact him regarding the three-day release. This appears to have been harmless, if ineffective, because both the State and the trial judge said that they would not agree to the three-day release under any circumstances. We also cannot determine whether counsel was aware, at any time during the plea hearing, that Heys mistakenly believed he would not be granted new counsel upon a proper claim of a complete breakdown of clientattorney communications. Therefore, based upon the record before us, we cannot say that counsel was ineffective for failing to ensure that Heys received new counsel or for ensuring that Heys was aware that he could obtain new counsel. In fact, we are not sure what more counsel could have done under the circumstances besides repeating the request to withdraw and asking the trial court what it would do if Heys made the request personally.
 {¶ 15} We next turn to Heys' claim that he was prejudiced by counsel's ineffectiveness. Heys contends that he would not have pled guilty had he known that he could obtain new counsel. However, as noted above, it is not clear from the record that Heys truly wished to obtain new counsel, or whether he was merely upset about the issue of the release prior to incarceration.
 {¶ 16} Moreover, it appears from the discussion in the record that Heys admitted that he intended to accept the plea agreement. While it is not clear whether Heys' acceptance of the agreement was conditioned upon the trial court's decision to grant a three-day release to clear up his personal affairs, we note that the record does not demonstrate that he would have rejected the plea without the grant of the release.
 {¶ 17} We conclude that Heys has failed to demonstrate, on this record, any prejudicial ineffective assistance of counsel. Accordingly, the First Assignment of Error is overruled.
 III {¶ 18} The Second Assignment of Error is as follows:
 {¶ 19} "The appellants plea was not voluntary and the trial court erred in accepting the plea."
 {¶ 20} Heys contends that the misunderstanding with regard to the appointment of new trial counsel resulted in his belief that he was required either to plead guilty or to face trial without new counsel. He claims that this resulted in the entry of a guilty plea that was neither freely or voluntarily made.
 {¶ 21} Crim.R. 11(C)(2) states in pertinent part:
 {¶ 22} "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and doing all of the following:
 {¶ 23} "(a) Determining that the defendant is making the plea voluntarily, with understanding the nature of the charges and the maximum penalty involved * * *
 {¶ 24} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * * and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 25} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself."
 {¶ 26} During the plea hearing, the trial court determined that Heys has a tenth grade education and that he is able to read. The court further determined that Heys was not under the influence of any drugs, medications or alcohol and that he did not suffer from any mental or physical condition that would make it hard for him to understand the proceedings. The trial court asked Heys whether he understood the nature of the charges against him and whether he understood the terms of the proposed plea agreement. Heys indicated that he did. Heys stated that he was entering the plea voluntarily and of his own free will and that he had not been threatened or forced to enter the plea. Heys further stated that no one had made any promises to induce him to enter the plea.
 {¶ 27} The trial court went on to explain the charges against Heys and the possible punishments and to explain that by entering a plea of guilty Heys was giving up certain constitutional rights, including the right to trial by jury and to confront witnesses. Heys indicated that he understood everything the trial court had said, and then proceeded to sign the plea form.
 {¶ 28} We conclude that the trial court conducted a proper Crim.R. 11 inquiry before accepting Heys' plea. The more troublesome question is whether any misunderstanding regarding the issue of the appointment of new counsel was a factor in Heys' decision to enter the plea.
 {¶ 29} As noted earlier, there is nothing in the record to demonstrate that Heys thought he would be denied new counsel if he proceeded to trial. Conversely, the record clearly shows that the trial court informed Heys that it would consider a motion for new counsel if Heys had grounds for the motion. Also, as indicated above, the record does not support a finding that Heys' decision to accept the plea was based upon his fear that he would have to proceed to trial without new counsel.
 {¶ 30} Based upon the record before us, we conclude that the trial court did not err in finding that Heys' guilty plea was made freely and voluntarily. Accordingly, the Second Assignment of Error is overruled.
 IV {¶ 31} Both of Heys' assignments of error having been overruled, the judgment of the trial court is Affirmed.
Brogan, P.J., and Wolff, J., concur.